IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG DIVISION

**CARL EDWARD DODSON,**

  **Petitioner-Defendant,**

               **Civil Action No. 1:12-cv-97**
**v.**               **Criminal Action No. 1:08-cr-53-2**
               **(Judge Keeley)**

**UNITED STATES OF AMERICA,**

  **Respondent-Plaintiff.**

**REPORT AND RECOMMENDATION TO THE DISTRICT JUDGE
RECOMMENDING THAT THE DISTRICT COURT DENY PETITIONER'S MOTION
UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

**I. INTRODUCTION**

On June 11, 2012, Petitioner-Defendant CARL EDWARD DODSON ("Petitioner") proceeding *pro se*, filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody. (Civil Action No. 1:12-cv-97, ECF No. 1; Criminal Action No. 1:08-cr-53-2, ECF No. 275 ("Mot.").)

On June 12, 2012, the undersigned Magistrate Judge entered an Order directing Respondent, the United States of America ("Respondent" or "Government"), to answer Petitioner's motion. (Civil Action No. 1:12-cv-97, ECF No. 6; Criminal Action No. 1:08-cr-53, ECF No. 280.)

The Government responded on July 11, 2012. (Civil Action No. 1:12-cv-97, ECF No. 9; Criminal Action No. 1:08-cr-53, ECF No. 283 ("Resp.").)

The Petitioner filed a reply on July 26, 2012. (Civil Action No. 1:12-cv-97, ECF No. 10; Criminal Action No. 1:08-cr-53, ECF No. 284 ("Reply.").)

The undersigned now issues this Report and Recommendation on Petitioner's motion without holding an evidentiary hearing. For the reasons stated below, the undersigned recommends that the

District Judge dismiss Petitioner's Motion.

## II. FACTS

*A. Conviction and Sentence*

On July 1, 2008, the Grand Jury indicted Petitioner on twenty four counts of a fifty-six count Indictment which included three other co-defendants. (Indictment, Criminal Action No. 1:08-cr-53, ECF No. 1.) Petitioner was charged with the following:

> COUNT ONE (1): Conspiracy to manufacture, possess with intent to distribute, and distribute fifty (50) grams or more of methamphetamine and to possess and distribute listed chemical with intent to manufacture methamphetamine and to possess with to possess and distribute listed chemical knowing and having reasonable cause to believe that the listed chemicals will be used to manufacture methamphetamine in violation of 21 U.S.C §§ 846 and 841(c)(2).
> COUNT TWO (2) with manufacturing fifty (50) grams or more of methamphetamine-aiding and abetting in violation of 21 U.S.C§ 841(a)(1) and 841(b)(1)(A) and 18 U.S.C § 2;
> COUNT SIX (6), EIGHT (8), TWELVE (12), FOURTEEN (14), SIXTEEN (16), SEVENTEEN (17), EIGHTEEN (18), TWENTY-ONE (21), TWENTY-FOUR (24), TWENTY-NINE (29), THIRTY (30), THIRTY-TWO (32), THIRTY FOUR (34), THIRTY EIGHT (38), FORTY (40), FORTY-ONE (41), FORTY-TWO (42), FORTY-FOUR (44), FORTY SIX (46), FORTY EIGHT (48), FIFTY (50) with possession and distribution of listed chemical knowing and having reasonable cause to believe that the listed chemical will be used to manufacture methamphetamine in violation of 21 U.S.C § 841(c)(2) and/or Aiding and Abetting in violation of 21 U.S.C § 841(c)(2) and 18 U.S.C§ 2;
> COUNT FIFTY-ONE (51) with possession of any equipment, chemical, product, and material which may be used to manufacture methamphetamine knowing, intending, and having reasonable cause to believe that it will be used to manufacture methamphetamine-Aiding and Abetting, in violation of 21 U.S.C §§ 843(a)(6) and 843(d)(2) and 18 U.S.C § 2.(*Id.*)

On October 7, 2008, Petitioner signed a plea agreement in which he proposed to enter a plea of guilty to Count Fifty of the Indictment charging him with knowingly and intentionally possessing or distributing Pseudoephedrine, a List I chemical, knowing or having reasonable cause to believe, that the listed chemical would be used to manufacture a mixture or substance containing a detectable

amount of methamphetamine, in violation of Title 21, United States Code, Section 841(c)(2). (Plea Agreement, Criminal Action No. 1:08-cr-53, ECF No. 105.) Petitioner reserved his right to appeal and collaterally attack his sentence only with respect to any sentence imposed using a base offense level 27 or higher. (*Id.*)

Petitioner appeared before Judge Keeley on October 8, 2008 to enter his plea of guilty. (Criminal Action No. 1:08-cr-53, ECF No. 107.) At the time of his plea, Petitioner was 38 years old and had graduated from high school. (Criminal Action No. 1:08-cr-53-2, ECF No. 148, Plea Hrg. Tr. at 11:10-19 ("Plea Hrg. Tr.").) The Court asked Petitioner if he understood that he was giving up the right to appeal any sentence with a base offense level of twenty seven or higher, and Petitioner replied that he did. (*Id.* at 36:11-25, 37:1-25, 38:1-4.) The Court also asked Petitioner if he understood that he was giving up his right to file a habeas petition on any sentence with a base offense level of twenty seven or higher, and Petitioner replied that he did. (*Id.* at 38:5-25, 39:1-14.) Petitioner affirmed that he and his counsel had discussed the ramifications of the entire plea agreement. (*Id.* at 45:17-23.) The Court reviewed all the rights Petitioner was giving up by entering a plea of guilty. (*Id.* at 25:22-28:15.) During the hearing, the Government presented the testimony of Corporal Cayton, Trooper with West Virginia State Police, to establish a factual basis for the plea. (*Id.* at 49:4-54:3.) Petitioner did not contest Corporal Cayton's testimony. (*Id.* at 55:15-25.)

After the Government presented Corporal Cayton's testimony, Petitioner advised the Court that he was guilty of Count Fifty of the Indictment. (*Id.* ) Additionally, Petitioner testified under oath that no one had attempted to force him to plead guilty and that his plea was not the result of any promises other than those in the plea agreement. (*Id.* at 57:4-7.) When asked, Petitioner acknowledged that his counsel had adequately represented him and that his counsel had not left

anything undone. (*Id.* at 59:1-17.) At the conclusion, Judge Keeley determined that Petitioner's plea was made freely and voluntarily, that Petitioner was competent and capable of entering an informed plea, that Petitioner was aware of the consequences of his guilty plea and that there was a basis in fact for his plea. (*Id.* at 60:23-61:1-8.) Petitioner did not object to the Court's finding. (*Id.*) By Order dated October 8, 2008, Judge Keeley accepted Petitioner's plea of guilty. (Criminal Action No. 1:08-cr-53-2, ECF No. 107.)

A sentencing hearing was scheduled for January 21, 2009 before Judge Keeley. (Criminal Action No. 1:08-cr-53-2, ECF No. 135.) On January 20, 2009, Petitioner, by attorney, Elgine McArdle, filed a written motion to continue the sentencing hearing for reasons that his plea was not knowingly and voluntarily entered and that Petitioner was seeking new representation. (Criminal Action No. 1:08-cr-53-2, ECF No. 138.) On January 20, 2009, Petitioner's Motion to continue the sentencing hearing was denied. (Criminal Action No. 1:08-cr-53-2, ECF No. 139.)

On January 21, 2009, Petitioner appeared before Judge Keeley for the sentencing hearing. (Criminal Action No. 1:08-cr-53-2, ECF No. 197, Jan. 21st Mtn. to Withdraw Plea Hrg. Tr. at 3:1-15 ("Jan. 21st Mtn Hrg. Tr.").) At that hearing, Petitioner's attorney, Wells Dillon, made an oral motion to withdraw as counsel, which was granted. (Criminal Action No. 1:08-cr-53-2, ECF No. 142.) In addition, Ms. McArdle was noticed as counsel for Petitioner, and she made an oral motion on behalf of Petitioner to withdraw his plea of guilty. (Criminal Action No. 1:08-cr-53-2, ECF No. 143.) After Petitioner testified in support of his motion to withdraw his plea of guilty, the Court continued the hearing on the Motion to Withdraw his Guilty plea/sentencing to February 6, 2009. (Criminal Action No. 1:08-cr-53-2, ECF No. 145.) The parties were given until February 5, 2009 to submit additional evidence for the hearing. (*Id.*)

On February 6, 2009, Petitioner appeared before Judge Keeley for the continuation of his Motion to Withdraw Plea of Guilty and Sentencing. . (Criminal Action No. 1:08-cr-53-2, ECF No. 199, Feb. 6th Mtn. to Withdraw Plea Hrg. Tr. at 4:2-6 ("Feb 6th Mtn. Hrg. Tr.").) After a lengthy hearing, the Court denied the Defendant's Motion to Withdraw his guilty plea. (*Id.* at 196-207) Thereafter, the Court was ready to proceed with sentencing but Petitioner's counsel was not prepared to go forward. Consequently, the Court continued the sentencing hearing. (*Id.* at 219).

On March 5, 2009, Petitioner appeared before Judge Keeley for the continuation of his sentencing hearing. (Criminal Action No. 1:08-cr-53-2, ECF No. 196, Sentencing Hrg. Tr. 3:5-10) Judge Keeley sentenced him to 78 months imprisonment followed by a three-year term of supervised release. (Criminal Action No. 1:08-cr-53-2, ECF No. 172, Judgment.)

## B.     Direct Appeal

Petitioner, by counsel Elgine Heceta McArdle, Esquire, filed a Notice of Appeal to the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") on March 18, 2009. (Criminal Action No. 1:08-cr-53, ECF No. 177.) On appeal, Petitioner "argue[d] that the district court erred in denying his motion to withdraw his guilty plea." *United States v. Dodson*, 417 F. App'x 357, 2011 WL 933706, at *1 (4th Cir. Mar. 18, 2011) (per curiam). However, the Fourth Circuit affirmed the district court's order denying Petitioner's motion to withdraw his guilty plea. *Dodson*, 417 F. App'x at 357, 2011 WL 933706, at *1. On October 3, 2011, the United States Supreme Court denied Petitioner's petition for a writ of certiorari. *Dodson v. United States*, 132 S. Ct. 217 (2011).

## C.     Federal Habeas Corpus

### 1.     Petitioner's Motion

Petitioner alleges that his counsel did not properly advise him of the consequences of his effort to withdraw his plea, which resulted in the Court denying a downward adjustment for acceptance of responsibility and the Court enhancing his sentence for obstruction of justice. (Mot. at 2.) Specifically, Petitioner alleges the following:

1. Mr. Dillon was simply incompetent in not discussing with his client his absolute desire to withdraw his plea and the consequences thereof.

2. The engagement of Ms. McArdle as counsel through the California Defense Organization, and her role thereafter, left no time for consultation with her client and therefore, she should not have gone forward with the hearing on January 21, 2009.

(Mot. at 9.)

For relief, Petitioner asks the Court to reduce his sentence by thirty-two months which was the resulting enhancement to his sentence caused by the alleged ineffective assistance of counsel. (Mot. at 2.)

### 2. Government's Response

In its Response, the Government asserts that the Defendant waived his right to collaterally attack his sentence in Paragraph 12 of the plea agreement if the base offense level of the sentence was 26 or lower. (Resp. at 3.) The Government further asserts that an evidentiary hearing is not needed as the Petitioner has not revealed any additional facts nor has he raised any important issues that are in dispute. (Resp. at 5.) Regarding the Petitioner's claim of ineffective assistance of counsel, the Government asserts that the Petitioner has not met the burden set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) for ineffective assistance of counsel. Specifically, the Government asserts that the Petitioner has not shown that counsel's performance was deficient and second, that Petitioner has not shown that but for counsel's unprofessional errors, the result of the proceedings would have been different. (Resp. at 7-8.)

### 3. Petitioner's Reply

In Petitioner's Reply, he asserts that the waiver of appellate rights was not effective because he was sentenced above a base level of 26. Furthermore, Petitioner asserts that at sentencing, the Judge told him he had the right to appeal and that he had preserved the issue of ineffective assistance of counsel for either direct appeal or habeas relief. (Reply at 3.) Regarding the substantive issue, the Petitioner again asserts that he has met the burden of the *Strickland* test. Specifically, he argues that both counsel failed to advise him of the serious consequence of withdrawing the plea and had he been so advised he would have avoided the longer sentence. (Reply at 8.)

### D. *Recommendation*

Based upon a review of the record, the undersigned recommends that Petitioner's Motion be denied and dismissed from the docket because Petitioner has failed to meet the two prongs of *Strickland* to demonstrate any claims of ineffective assistance of either counsel, Mr. Dillon or Ms. McArdle.

### III. ANALYSIS

### A. *Waiver of Collateral Attack Rights Based on Petitioner's Plea Agreement*

The Government is correct in asserting that Petitioner waived his right to collaterally attack his sentence in Paragraph 12 of the plea agreement if the base offense level of the sentence was 26 or lower. (Resp. at 3.) Petitioner is also correct in asserting that the District Judge told him at sentencing that he had the right to appeal and that he had preserved the issue of ineffective assistance of counsel for either direct appeal or habeas relief. (Reply at 3.) District Judge Keeley stated at sentencing:

> "Now, you have the right to appeal from the judgement that I've just
> imposed on you. While I am aware that the terms of your plea

> agreement indicated that you were waiving your right to appeal and to file a Habeas petition, as things have evolved subsequent to your plea in October, you are challenging the fundamental fairness of the proceeding and you're challenging in particular your attorney's effective representation, so those are issues that may be ripe on direct appeal as this case is now set up or they may be ripe for Habeas petition but you certainly have preserved those issues."

(Criminal Action No. 1:08-cr-53-2, ECF No. 196, Sentencing Hrg. Tr. at 123:18-25, 124:1-3 ("Sentencing Hrg. Tr.").)

Furthermore, most courts of appeals have determined that waivers of collateral attack rights encompass claims "that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver." *Braxton v. United States*, 358 F. Supp. 2d 497, 502 (W.D. Va. 2005).

The Petitioner did in fact appeal to the Fourth Circuit Judge Keeley's denial of his motion to withdraw his plea taken on October 8, 2008 based on his ineffective assistance of counsel claim. The Fourth Circuit affirmed Judge Keeley's decision denying Petitioner's motion to withdraw his plea. *United States v. Dodson*, 417 F. App'x 357, 2011 WL 933706, at *1 (4th Cir. Mar. 18, 2011) (per curiam).

Therefore, the undersigned Magistrate Judge recommends that the waiver of his appellate rights at the plea hearing not be considered in this case and that the petition be reviewed on the substantive claim of ineffective assistance of counsel.

**B.** *Petitioner's Claims Alleging Ineffective Assistance of Counsel Have No Merit*

    **1.** **Standard Governing Claims of Ineffective Assistance of Counsel**

The Supreme Court has set forth a two-prong test for determining whether a convicted defendant's claim of ineffective assistance of counsel warrants the reversal of his conviction.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, "the defendant must show that counsel's performance was deficient." *Id.* Second, "the defendant must show that the deficient performance prejudiced the defense." *Id.* These two prongs are commonly referred to as the "performance" and "prejudice" prongs. *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1297 (4th Cir. 1992).

To satisfy the "performance" prong, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687. However, a reviewing court does not "grade" trial counsel's performance, and there is a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Carter v. Lee*, 283 F.3d 240, 249 (4th Cir. 2002). Essentially, the reviewing court must not "second-guess" counsel's performance and must "evaluate counsel's performance 'from counsel's perspective at the time.'" *Hunt v. Lee*, 291 F.3d 284, 289 (4th Cir. 2002). Furthermore, the standard of reasonableness is objective, not subjective. *See Strickland*, 466 U.S. at 688.

To satisfy the "prejudice" prong, the defendant must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. Therefore, if counsel's errors have no effect on the judgment, the conviction should not be reversed. *See id.* at 691. In the context of a guilty plea, a petitioner must demonstrate that there is a reasonable probability that but for his attorney's alleged mistakes, he would not have pled guilty and instead would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). The Fourth Circuit has recognized that if a defendant "cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong." *Fields*, 956 F.2d at 1297.

The Fourth Circuit has set forth two categories of decisions made by trial counsel when

analyzing ineffective assistance of counsel claims. First, there are "personal" decisions that require the defendant's consent, such as the decision to enter a guilty plea, the decision to waive a trial by jury, the decision to appeal, and the decision of whether to testify at trial. *Sexton v. French*, 163 F.3d 874, 885 (4th Cir. 1998) (citations omitted). The second category includes decisions that "'primarily involve trial strategy and tactics,' such as 'what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed." *Id.* (quoting *United States v. Teague*, 953 F.2d 1525, 1531 (11th Cir. 1992)). Accordingly, "[t]here is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." *Harrington v. Richter*, 131 S. Ct. 770, 790 (2011) (citations omitted) (internal quotation marks omitted).

2. **Performance Prong of *Strickland***

Petitioner's claims of deficient performance of counsel are without merit. Petitioner asserts he was not advised regarding the consequences of trying to withdraw his plea until after the January 21, 2008 hearing.

    a.    **The Court's Explanation Regarding Defendant's Desire to Withdraw His Plea At The Rule 11 Colloquy**

It is clear from the plea colloquy on October 8, 2008 that Petitioner understood the benefits and the consequences of pleading guilty. The Court explained to Petitioner as follows:

> THE COURT: ...first let me advise all three of you, you are now under oath and if you do testify during this hearing about a material matter that is false and your answers are false, you could subject yourself to a further charge and that charge would be of false swearing or perjury. Do you understand that, . . . Mr. Dodson?
>
> DEFENDANT CARL DODSON: Yes.

>THE COURT: All right, thank you. Also I want to advise all three of you that you're free to ask questions and to seek an explanation from me or from your attorney throughout this hearing. I don't want to proceed should at anytime during the hearing you become confused or uncertain about what's going on. Do you understand, . . . Mr. Dodson?
>
>DEFENDANT DODSON: Yes.

(Plea Hrg. Tr. 5:7-25, 6:3.)

At the Rule 11 plea colloquy, Judge Keeley noted that Petitioner was competent and capable to enter a guilty plea, that he made his plea freely and voluntarily, and that he understood the consequences of his guilty plea. (*Id.* at 60:23-25, 611-4.) Overall, Petitioner asserted his understanding of the consequences of his plea agreement throughout the Rule 11 colloquy. (*See id.* at 55:15-25.) In fact, Petitioner answered during the plea colloquy as follows:

>THE COURT: ...Now, Mr. Dodson, did Mr. Dillon–or has Mr. Dillon adequately represented you in this case?
>
>DEFENDANT CARL DODSON: Yes.
>
>THE COURT: Has he left anything undone that you think he should have undertaken by way of defending you in the case?
>
>DEFENDANT CARL DODSON: No.
>
>THE COURT: Did he adequately share the discovery with you?
>
>DEFENDANT CARL DODSON: Yes.
>
>THE COURT: And did he talk about the strategies of going to trial versus pleading in the case with you?
>
>DEFENDANT CARL DODSON: Yes

(Plea Hrg. Tr. at 59:1-14).

The Court further went on to explain:

> THE COURT: All right. but if you – if I accept your plea here today, do you understand that you're going to be bound by that guilty plea no matter what sentence you receive? Even if you can appeal, you're still bound by the guilty plea once you say I am guilty. If I find that's knowing and voluntary statement by you, you're bound by it. Do you understand that . . .?
>
> DEFENDANT CARL DODSON: Yes.

(Plea Hrg. Tr. 39:22-25, 40:1-8.).

The Court further explained:

> THE COURT: You can argue about the sentence being too high, but you can't withdraw the guilty plea. do you understand?
>
> DEFENDANT CARL DODSON: Yes.

(Plea Hrg. Tr. 40:18-25.)

In addition, the Court made it very clear throughout the plea colloquy that if Petitioner lied under oath that he would be subject to further charges. (Plea Hrg. Tr. 5:7-25, 6:3, 28:11-13.)

A defendant's sworn representations made at a plea hearing "carry a strong presumption of verity" and "constitute a formidable barrier against any subsequent collateral proceedings." *Blackledge*, 431 U.S. at 74. Therefore, guilty pleas are not normally subject to collateral attack, but can be so challenged on the ground that the plea was not knowing or voluntary. *Bousley v. United States*, 523 U.S. 614, 621-22 (1998). A defendant may attack the voluntary nature of his plea by demonstrating that he received ineffective assistance of counsel. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). However, "in the absence of extraordinary circumstances, . . . allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" *Lemaster*, 403 F.3d at 221 (citations omitted).

After Petitioner pled guilty, a sentencing hearing was scheduled for January 21, 2009. At that hearing the Court again advised Petitioner that he was under oath and that if he lied that he would be subject to charges of perjury and that may affect his sentencing. (Jan. 21st Mtn. Hrg. Tr. 3:16-21.)

The day before that scheduled sentencing hearing, Petitioner retained new counsel and the new counsel filed a motion to continue the sentencing hearing. That motion was denied by the Court the same day.

        **b.**        **Mr. Dillon's Awareness Regarding Petitioner's Desire to Withdraw His Guilty Plea**

Petitioner did not inform Mr. Dillon that Petitioner had hired new counsel or planned to withdraw his guilty plea until the parties were in court on January 21, 2009. Mr. Dillon's first notice that Petitioner may have hired new counsel was when the motion to continue the January 21st sentencing hearing was filed by Ms. McArdle on January 20th. (Jan. 21st Mtn. Hrg. Tr., 4:12-25, 5:3-7.) Petitioner actually did not fire Mr. Dillon until they were in open court on January 21, 2009. Petitioner testified in court that he had not talked to Mr. Dillon about his intent to hire another attorney prior to that hearing. (Jan. 21st Mtn. Hrg. Tr. 8:8-13.) Petitioner indicated that he had hired Ms. McArdle the week before the January 21st hearing but had been looking for another attorney for a while. (Jan. 21st Mtn. Hrg. Tr. 7:7-18.) Mr. Dillon testified that he had scheduled an appointment to meet with Petitioner prior to the January 21, 2009 hearing but Petitioner canceled that appointment without giving a reason and did not reschedule. (Jan. 21st Mtn. Hrg. Tr., 9:5-12.) On December 23, 2008, Petitioner had his debriefing and did not mention to Mr. Dillon that he wanted to withdraw his guilty plea or that he was dissatisfied with Mr. Dillon's services.

In summary, from December 3, 2008 up until the parties were in court for the sentencing

hearing on January 21, 2009, Mr. Dillon had no idea that Petitioner was intending to hire new counsel or that Petitioner was intending to withdraw his guilty plea. Mr. Dillon could not be expected to advise Petitioner regarding something he did not know Petitioner was attempting to do. Therefore, the undersigned Magistrate cannot find that Mr. Dillon was deficient in the performance of his duties as counsel for Petitioner.

### c. Ms. McArdle's Performance Regarding Petitioner's Motion to Withdraw His Guilty Plea

As for Ms. McArdle's alleged deficient performance, Petitioner alleges that Ms. McArdle was not ready to proceed with his motion to withdraw his plea on January 21, 2009 and had not discussed the consequences of that motion with him. However, the testimony that day indicates that Ms. McArdle was prepared to go forward with the motion to withdraw the guilty plea but not the sentencing.

> THE COURT: All right. Ms. McArdle, are you prepared to respond to Ms. Morgan's argument?
>
> MS. MCARDLE: I am prepared to respond to the argument of the motion to withdraw the plea.

(Jan. 21st Mtn. Hrg. Tr., 38:19-22.)

In fact, prior to proceeding at the hearing with the motion to withdraw the guilty plea, Ms. McArdle asked the court if she could have a moment with her client. *(Id.* at 44:5-11.) There was a pause in the proceedings and when the proceedings resumed Ms McArdle said she was ready to proceed. (*Id.* at 44: 5-9.) At the February 26, 2009 hearing, the Court inquired as to whether Ms. McArdle had counseled her client on the possibility of an enhancement based on his motion to withdraw. (Feb 6th Mtn. Hrg. Tr., 209:1-2.) Ms. McArdle stated in response that Petitioner was informed at the last hearing, which was the January 21, 2009 hearing. (Feb 6th Mtn. Hrg. Tr.,

209:3-4.) Further discussion regarding these issues followed:

> MS. MORGAN: We are planning on arguing that his false testimony is inconsistent with acceptance of responsibility and that his false testimony during the hearing today and on January 21, 2009 constitute obstruction of justice that warrants an enhancement under Guideline 3C1.1.
>
> THE COURT: And you are prepared to put on the proper evidence to that because the case law is pretty clear what you have to do?
>
> MS MORGAN: Yes, Your Honor.
>
> THE COURT: All right. Have you had an opportunity Ms. McArdle to talk to your client about that?
>
> MS. MCARDLE: No, Your Honor, I – I did discuss– well , I discussed with my client the 2-level acceptance and I indicated the obstruction. I did discuss that with him at the last hearing.

( Feb 6th Mtn. Hrg. Tr., 209: 12-25.)

In summary, Ms. McArdle was hired the week before the January 21, 2009 by Petitioner. Petitioner testified that he had been looking for a new attorney for quite some time. The transcript from the January 21, 2009 hearing indicates that Ms. McArdle was prepared to go forward with Petitioner's motion to withdraw his plea on that date and that she talked with her client about the consequences of going forward with that motion at the January 21st hearing. Therefore, the undersigned Magistrate can not find that Ms McArdle was deficient in the performance of her duties as counsel for Petitioner on or before the January 21, 2009 hearing.

### 3. **Prejudice Prong of *Strickland***

Petitioner asserts in his petition that he was not made aware of the possible enhancements to his sentence for lying to the court and withdrawing his plea until after the January 21, 2009 hearing and the damage had already been done. However, the hearing on the motion to withdraw

his guilty plea was continued to February 6, 2009, and Petitioner certainly had the opportunity to tell the Court on February 6th that he was not aware of the consequences at the last hearing and therefore no longer wanted to proceed with his motion.

Even if Petitioner's counsel's performance was deficient in some way, Petitioner was not so prejudiced that his Sixth Amendment rights were infringed upon. Here, Petitioner does not allege that he would not have gone forward with his motion to withdraw his guilty plea had he known the consequences because he did in fact go forward with that motion on February 6, 2009 after it had been continued and after he alleges that he was advised of the consequences. Although Petitioner asserted ineffective assistance of counsel claims against Mr. Dillon that were addressed in the direct appeal of Judge Keeley's denial of his motion to withdraw, he failed to voice any concerns about Ms McArdle's performance during sentencing. Instead, Petitioner only contends that if either of his counsel would not have erred in advising him, he would not have received a two-level sentencing enhancement for obstruction of justice and would have received a downward departure for acceptance of responsibility. However, this is insufficient to meet the *Strickland* standard. *See Fields*, 956 F.2d at 1297 (holding that a defendant who pled guilty and subsequently challenged his sentence on an ineffective assistance of counsel claim without demonstrating that but for counsel's errors he would not have pled guilty could not show actual prejudice).

In sum, Petitioner understood the consequences of his motion to withdraw his plea and the consequences of lying to the court because it was explained to him during the Rule 11 Plea Colloquy and was explained to him again on January 21, 2009 at the first hearing on his motion to withdraw plea. Furthermore, Petitioner admits the consequences of withdrawing his plea were explained to him before the February 6, 2009 hearing (which was a continuation of the January 21st

hearing) but proceeded forward with that motion on February 6th anyway. Therefore, the undersigned recommends that this claim be dismissed because Petitioner has not met his burden under the two prongs of *Strickland*.

## IV.  RECOMMENDATION

Based upon a review of the record, the undersigned recommends that Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Civil Action No. 1:12-cv-97, ECF No. 1; Criminal Action No. 1:08-cr-53-2, ECF No. 275) be **DENIED** and **DISMISSED** because Petitioner has failed to meet the two prongs of *Strickland* to demonstrate any claims of ineffective assistance of counsel.

Within **fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

The Court further directs the Clerk of the Court to mail a copy of this Report and Recommendation to the *pro se* Petitioner Carl Edward Dodson.

**DATED:** September 5, 2012

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE